# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
### No. 18-919V

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * * * | * |
| MARIA JILL VANDERGRIFF and JON-MICHAEL VANDERGRIFF, administrators of the Estate of R.V., | * TO BE PUBLISHED * * Special Master Katherine E. Oler |
| Petitioners, | * Filed: December 31, 2019 |
| v. | * |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | * Attorneys' Fees & Costs; * Reasonable Basis; DTaP-Hib-IPV * vaccine; Pentacel; Infant Death |
| Respondent. | * |
| * * * * * * * * * * * * * * * * * * * * * * * * * * | * |

*Clifford J. Shoemaker*, Shoemaker, Gentry, Knickelbein, Vienna, VA, for Petitioner.

*Ryan D. Pyles*, U.S. Department of Justice, Washington, D.C., for Respondent.

### **DECISION ON MOTION FOR FINAL ATTORNEYS' FEES AND COSTS**[1]

On June 27, 2018, Maria Jill and Jon-Michael Vandergriff ("Petitioners") filed a petition as administrators of the Estate of R.V., their son, seeking compensation under the National Vaccine Injury Compensation Program (the "Vaccine Program")[2] alleging that R.V. died as a result of receiving the DTaP-Hib-IPV ("Pentacel") vaccine on March 28, 2017. Pet. at 2, ECF No. 1.

Respondent filed his Rule 4(c) Report on February 14, 2019 (ECF No. 17). Petitioners filed a Motion for a Dismissal Decision on April 5, 2019 (ECF No. 20). I issued a decision

---

[1] This Decision will be posted on the Court of Federal Claims' website. **This means the ruling will be available to anyone with access to the internet**. As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). If, upon review, I agree that the identified materials fit within this definition, I will redact such material from public access. Otherwise, the Decision in its present form will be available. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

1

dismissing the petition for insufficient proof on April 8, 2019. ECF No. 21.

On May 17, 2019, Petitioners filed a Motion for Attorneys' Fees and Costs requesting a total of $31,482.10. Fees App., ECF No. 23. Petitioners request attorneys' fees in the amount of $28,972.50 and costs in the amount of $2,509.60. *Id.* at 1.

Respondent submitted his response in opposition to Petitioners' motion on May 31, 2019. Fees Resp., ECF No. 26. Petitioners filed a reply on June 7, 2019. Fees Reply, ECF No. 27.

For the reasons set forth below, I find that Petitioners did not have a reasonable basis to file the petition. Therefore, their motion for attorneys' fees and costs is denied.

I. **Relevant Medical History**

Petitioners' son, R.V., was born on January 25, 2017 and had a normal newborn checkup on January 30, 2017. Ex. 4 at 1-2. On February 22, 2017, R.V. had his one-month checkup, which was also normal and unremarkable. *Id.* at 3-4. Petitioner refused any vaccinations at that visit and decided to start at the following appointment. *Id.* R.V. had his two-month well visit on March 28, 2017, where it was determined he had a supination deformity of his right foot. *Id.* at 6-7. He received the Pentacel vaccine during that visit. *Id.* at 8; Ex. 1 at 1.

At nine weeks old, R.V.'s mother took him to see a chiropractor on March 31, 2017. Ex. 8 at 1. The record from that visit indicates that R.V.'s feeding and bowel movements were normal and that he slept well. *Id.* His mother reported that R.V. "does spit up a lot and that his right foot curved unusually." *Id.* The chiropractor diagnosed R.V. with "[s]ubluxation, [t]horacic [r]egion" and treated him with chiropractic adjustments. *Id.*

Piedmont Medical Center Emergency Medical Services personnel responded to Petitioners' home at approximately 6:00pm on April 6, 2017 and noted the following: "Mother advised that [R.V.] was acting normally prior to putting him down for [a] nap. [R.V.] had no medical [history] and no recent history of illness or cough/cold like symptoms. No changes in eating habits or bowel/bladder changes." Ex. 14 at 29. R.V. was pronounced dead at 6:51pm. *Id.*

The investigative summary from the South Carolina Law Enforcement Division's Child Fatality report reads as follows:

> On April 6, 2017, around 3:00 pm or 4:00 pm, [R.V.'s] mother laid him in his bassinet for a nap. He was placed on his stomach with his head facing the wall. He cried for about five minutes and then fell asleep. His mother listened to him through a baby monitor. She heard a few noises, but nothing unusual. Around 5:30 pm, his mother went to check on him and she found him "so white" and "so cold" that he was like a baby doll. There was blood on his face. He was on his stomach with his head facing away from the wall. She called 911 and began CPR. Blood began coming out of his nose. EMS responded and attempted resuscitative efforts for approximately 40 minutes, but did not transport Vandergriff. He was pronounced deceased on scene. York County Sheriff's Office, York County Coroner's Office, and S/A Baird responded to the scene. The scene was processed and the parents

were interviewed. When the sheet was removed from the bassinet, there was a brown hand towel on top of the bassinet mattress, between the sheet and mattress. It was bunched up where the baby's face was when his mother found him. Vandergriff's mother stated that the towel was there to absorb spit up. A video reenactment was done on April 7, 2017.

Ex. 14 at 7.

Dr. Robert Thomas performed an autopsy the following day, April 7, 2017, at 8:15am. In the final summary of his report, Dr. Thomas concludes:

> After review of the decedent's past medical history, the alleged events on the day of April 6, 2017, the findings at autopsy, toxicologic testing, and chromosomal studies, it is the opinion of the prosector that the decedent, [R.V.], died as the result of likely asphyxial-related events secondary to crib positioning.

Ex. 5 at 4.

In his death certificate, the coroner listed R.V.'s cause of death as "sudden unexpected infant death" with a "significant condition" being "unsafe sleep position." Ex. 6 at 1. Under "how the injury occurred," it is noted that R.V. was "placed in prone position for nap." *Id*.

## II.     Procedural History

Petitioners filed their petition for compensation on June 27, 2018. Pet., ECF No. 1. Petitioners filed various medical records and an affidavit on August 9, 2018. Exs. 1-9, ECF No. 8. An initial statement of completion was filed on August 15, 2018. ECF No. 9.

On August 15, 2018, Respondent filed a status report identifying a number of missing records. ECF No. 10. Petitioners filed records from Piedmont Medical Center EMS on August 24, 2018. Ex. 10, ECF No. 11. The coroner's report was filed on October 8, 2018, along with a letter from the South Carolina Law Enforcement Division refusing to provide records absent a court order. Exs. 11-13, ECF No. 12. I granted Petitioners' motion for an order to produce said records on October 18, 2018 and they were subsequently filed on December 19, 2018. ECF No. 14; Ex. 14, ECF No. 15. On December 19, 2018, Petitioners also filed an amended statement of completion. ECF No. 16.

Respondent filed his Rule 4(c) Report on February 14, 2019, recommending against compensation. ECF No. 17. On April 2, 2019, Petitioners filed a status report indicating their intent to dismiss the petition. ECF No. 19.

On April 5, 2019, Petitioners filed a motion for a decision dismissing their petition. ECF No. 20. I granted the motion and issued a decision dismissing the petition for insufficient proof on April 8, 2019. ECF No. 20. Judgment entered on May 9, 2019. ECF No. 22.

On May 17, 2019, Petitioners filed a motion for attorneys' fees and costs. ECF No. 23. Respondent filed a response in opposition on May 31, 2019 (ECF No. 26) and Petitioners filed their reply on June 7, 2019 (ECF No. 27). This matter is now ripe for a determination.

### III.   Parties' Arguments

In his response to Petitioners' motion for attorneys' fees and costs, Respondent argues that the petition lacked reasonable basis. Respondent claims that "[P]etitioners have provided no evidence of vaccine causation to satisfy the Act's objective reasonable basis standard." Fees Resp. at 6-7. Respondent states that "the investigation records show that nothing was wrong with RV for nine days after vaccination, and then, according to the medical examiner's conclusion, the cause of RV's death was crib positioning." *Id*. at 7. Respondent argues that "[b]y filing the petition without first completing an investigation into the claim and determining that evidence of causation could be produced, counsel assumed the risk of being unable to ultimately establish a reasonable basis for the claim set forth in the petition." *Id*. Respondent concludes that "[w]ithout any objective evidence that [ ] RV's vaccination caused him an alleged unspecified injury resulting in dealth, [P]etitioners cannot establish that their claim had any feasibility of success." *Id*. at 8.

In their reply, Petitioners argue that reasonable basis "requires objective evidence" yet "not [ ] a sufficiency of evidence demonstrating causation." Fees Reply at 1. Petitioners state that "Special Master Gowen's decision in *Boatmon* made it clear that a SIDS cause of death did not *preclude* a finding of causation" and that the petition in this case was filed after Special Master Gowen's decision in favor of the petitioners. *Id*. Petitioners filed medical records and "consulted with a pathologist and a neurologist in an effort to support their claim." *Id*. at 2. Following Respondent's Rule 4(c) Report, Petitioners consulted with additional experts and "determined they did not have reasonable basis to continue to pursue their case." *Id*. Petitioners claim "that the medical records filed, as well as the Affidavit of the Petitioner, while not sufficient to demonstrate causation, are sufficient to meet the reasonable basis standard in this limited instance." *Id*. They assert that they are entitled to fees and costs up until the point where reasonable basis was lost. *Id*.

### IV.   Legal Standard

Under the Vaccine Act, an award of reasonable attorneys' fees and costs is presumed where a petition for compensation is granted. Where compensation is denied, or a petition is dismissed, as it was in this case, the special master must determine whether the petition was brought in good faith and whether the claim had a reasonable basis. § 15(e)(1).

#### A. Good Faith

The good faith requirement is met through a subjective inquiry. *Di Roma v. Sec'y of Health & Human Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). Such a requirement is a "subjective standard that focuses upon whether [P]etitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Human Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996). Thus, so long as Petitioner had an honest belief that his claim could succeed, the good faith requirement is satisfied. *See Riley v. Sec'y of Health &*

4

*Human Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma*, 1993 WL 496981, at *1); *Turner*, 2007 WL 4410030, at *5.

### B. Reasonable Basis

Unlike the good-faith inquiry, an analysis of reasonable basis requires more than just a petitioner's belief in his claim. *Turner*, 2007 WL 4410030, at *6-7. Instead, the claim must at least be supported by objective evidence -- medical records or medical opinion. *Sharp-Roundtree v. Sec'y of Health & Human Servs.*, No. 14-804V, 2015 WL 12600336, at *3 (Fed. Cl. Spec. Mstr. Nov. 3, 2015).

While the statute does not define the quantum of proof needed to establish reasonable basis, it is "something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim." *Chuisano v. United States,* 116 Fed. Cl. 276, 283 (2014). The Court of Federal Claims affirmed in *Chuisano* that "[a]t the most basic level, a petitioner who submits no evidence would not be found to have reasonable basis…." *Id. at 286.* The Court in *Chuisano* found that a petition which relies on temporal proximity and a petitioner's affidavit is not sufficient to establish reasonable basis. *Id.* at 290. *See also Turpin v. Sec'y Health & Human Servs.*, No. 99-564V, 2005 WL 1026714, *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005) (finding no reasonable basis when petitioner submitted an affidavit and no other records); *Brown v. Sec'y Health & Human Servs.*, No. 99-539V, 2005 WL 1026713, *2 (Fed. Cl. Spec. Mstr. Mar. 11, 2005) (finding no reasonable basis when petitioner presented only e-mails between her and her attorney).

Temporal proximity between vaccination and onset of symptoms is a necessary component in establishing causation in non-Table cases, but without more, temporal proximity alone "fails to establish a reasonable basis for a vaccine claim." *Chuisano*, 116 Fed. Cl. at 291.

The Federal Circuit has stated that reasonable basis "is an objective inquiry" and concluded that "counsel may not use [an] impending statute of limitations deadline to establish a reasonable basis for [appellant's] claim." *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017). Further, an impending statute of limitations should not even be one of several factors the special master considers in her reasonable basis analysis. "[T]he Federal Circuit forbade, altogether, the consideration of statutory limitations deadlines—and all conduct of counsel—in determining whether there was a reasonable basis for a claim." *Amankwaa v. Sec'y of Health & Human Servs.*, 138 Fed. Cl. 282, 289 (2018).

"[I]n deciding reasonable basis the [s]pecial [m]aster needs to focus on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted with sufficient evidence to make a feasible claim for recovery." *Santacroce v. Sec'y of Health & Human Servs.*, No. 15-555V, 2018 WL 405121, at *7 (Fed. Cl. Jan. 5, 2018). Special masters cannot award compensation "based on the claims of petitioner alone, unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa-13(a)(1). Special masters and judges of the Court of Federal Claims have interpreted this provision to mean that petitioners must submit medical records or expert medical opinion in support of causation-in-fact claims. *See Waterman v. Sec'y of Health & Human Servs.,* 123 Fed. Cl. 564, 574 (2015) (citing *Dickerson v. Sec'y of Health & Human Servs.,* 35 Fed. Cl. 593, 599 (1996) (stating that medical opinion evidence is required to support an on-Table theory where medical records fail to establish a Table injury).

5

When determining if a reasonable basis exists, many special masters and judges consider a myriad of factors. The factors to be considered may include "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa*, 138 Fed. Cl. at 289. This approach allows the special master to look at each application for attorneys' fees and costs on a case-by-case basis. *Hamrick v. Sec'y of Health & Human Servs.*, No. 99-683V, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

V.   **Discussion**

   A. **Good Faith**

Petitioners are entitled to a presumption of good faith. *See Grice*, 36 Fed. Cl. 114 at 121. Respondent has not raised an issue with respect to good faith in this matter. *See* Fees Resp. Based on my own review of the case, I find that Petitioners acted in good faith when filing this petition.

   B. **Reasonable Basis for the Claims in the Petition**

The reasonable basis standard is objective and requires Petitioners to submit evidence in support of the petition. The petition in this case alleges that R.V. received the Pentacel vaccine on March 28, 2017. Pet. at 2. The petition further alleges that after his vaccination, R.V. "developed a fever that persisted until the day he died." *Id.* The petition states that R.V. died on April 6, 2017 as a result of vaccine injury. *Id.* As discussed in further detail below, I do not find these claims articulated in the petition to be supported by objective evidence.

   1. **Petitioner has not Presented Evidence of Causation**

The special master's analysis of reasonable basis should center around "an objective evaluation of the relevant medical information that served as the basis for petitioner's claim." *Frantz v. Sec'y of Health & Human Servs.*, 2019 WL 6974431 (Fed. Cl. 2019) (denying motion for review). An examination of the relevant medical information demonstrates that Petitioners have not presented evidence (medical records or medical opinion) that the Pentacel vaccine R.V. received on March 28, 2017 caused his death on April 6, 2017.

As an initial matter, none of R.V.'s treating physicians linked the Pentacel vaccination to his death. That vaccination was not listed as a differential diagnosis/cause. Instead, the evidence in the record demonstrates that R.V. died as a result of asphyxia due to crib positioning. This finding was articulated by Dr. Robert Thomas, the pathologist who performed the autopsy. Dr. Thomas determined the cause of death to be "positional asphyxiation due to prone sleeping position." Ex. 14 at 7. In addition, Coroner Sabrina H. Gast listed R.V.'s cause of death as "Sudden Unexpected Infant Death." Ex. 6 at 1. The significant condition listed on the death certificate is "unsafe sleep position." *Id.* How the injury occurred is listed on the death certificate as "placed in prone position for nap." *Id.*

In addition to the absence of medical record support for vaccine causation, Petitioners did not file an expert report articulating a link between R.V.'s vaccination and his death. Because they

6

have not submitted medical records or medical opinion (either from treating physicians or from an expert) that links R.V.'s death to his vaccination, Petitioners do not have a reasonable basis for their claim.

### 2. Statements in the Petition and Affidavits not Supported by the Record do not Establish Reasonable Basis

In their Fees Reply, Petitioners assert that "the medical records filed, as well as the Affidavit of the Petitioner, while not sufficient to demonstrate causation, are sufficient to meet the reasonable basis standard in this limited instance." Fees Reply at 2.

As previously discussed, none of the medical records (or other investigative records associated with R.V.'s death) filed in his case support vaccine causation.

The affidavit filed by Petitioners states that:

> Over the next 9 days, [R.V.] was still cooing and smiling some but seemed different. He seemed to cry louder and more often. He seemed more tired. He would sleep while being held, whereas before he would not normally do that. He did not seem to breastfeed as normal. (He didn't seem as hungry as normal.) All this was a dramatic change from his behavior before the shot….During this time he had a persistent fever…

Ex 9 at 3. Special masters cannot award compensation "based on the claims of petitioner alone, unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa-13(a)(1). Nothing in the medical records or other investigatory records surrounding R.V.'s death substantiates Petitioners claims.[3]

When interviewed by Special Agent (SA) Trista Baird on April 6, 2017 (the evening that R.V. died), Petitioners did not mention that R.V. was having any problems. In fact, SA Baird's summary states: "[R.V.] did not have any known medical issues." Ex. 14 at 25. Similarly, the EMS/Fire Report states, "Mother advised no medical history or recent history of illness." *Id.* at 29. This report continues, stating, "Mother advised that PT [patient] was acting normally prior to putting him down for nap. PT had no medical HX [history] and no recent history of illness or cough/cold like symptoms. No changes in eating habits or bowel/bladder changes." *Id.*

When "the medical and other written records contradict the claims brought forth in the petition," a special master is not arbitrary in concluding that reasonable basis for the petition did not exist. *Murphy v. Sec'y of Health & Human Servs.,* 30 Fed. Cl. 60, 62 (1993), *aff'd without opinion*, 48 F.3d 1236 (Fed. Cir. 1995). The documentary evidence filed in this case does not support the claims articulated in the petition or in the affidavit.

---

[3] Even if Petitioners' affidavit were corroborated by the medical records/other documentary evidence, it would not establish reasonable basis for filing the petition. The fact that R.V. seemed different, more tired, less hungry, and ran a fever, without more, is not evidence of vaccine causation.

As Petitioners state in their Fees Reply, "A finding of reasonable basis requires objective evidence. Objective evidence consists of medical records or expert opinion." Fees Reply at 1. As Petitioners have not filed medical records or expert opinion linking R.V.'s vaccination to his death, they have not established a reasonable basis for filing their petition.

### 3. The *Boatmon* Case

Petitioners mention the *Boatmon* decision in their Fees Reply.[4] They state, "Despite prior rulings against SIDS petitioners, Special Master Gowen's decision in *Boatmon* made it clear that a SIDS cause of death did not *preclude* a finding of causation." Fees Reply at 1 (emphasis in original).

Though prior findings of entitlement to compensation may serve as one factor in a reasonable basis analysis, I find, that under the circumstances present in this case, the decision of one special master awarding compensation in a case involving a similar injury, is not sufficient to establish reasonable basis, absent some form of medical evidence or medical opinion.[5]

To be clear, I recognize that Petitioners's counsel acted expeditiously and that Petitioners dismissed this case at a relatively early stage in the litigation. However, Petitioners provided no medical record evidence linking R.V.'s vaccination to his untimely death, nor were they able to submit a medical expert opinion in support of such a causal link. As such, I find that Petitioners did not have a reasonable basis to file their petition for compensation.

## VI.  Conclusion

Based on the foregoing, Petitioners' Motion for Attorneys' Fees and Costs is **DENIED**.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court SHALL ENTER JUDGMENT in accordance with this decision.[6]

---

[4] *Boatmon v. Sec'y of Health & Human Servs.*, No. 13-611V, 2017 WL 3432329 (Fed.Cl. Spec. Mstr. July 10, 2017). In *Boatmon*, a five-month-old baby died as a result of Sudden Infant Death Syndrome one day following a DTaP-IPV-HiB-PCV vaccination. *Id.* The special master found that the petitioners were entitled to compensation. *Id.* This decision was overturned on review approximately one week after the petition in this case was filed, finding an "improper application of the standard of proof required in vaccine cases." *Boatmon v. Sec'y of Health & Human Servs.*, 138 Fed.Cl. 566, 571 (Fed. Cl. 2018). On appeal, the United States Court of Appeals for the Federal Circuit affirmed the lower court's reversal, finding error "in allowing a theory that was at best 'plausible' to satisfy the [p]etitioners' burden of proof." *Boatmon v. Sec'y of Health & Human Servs.*, 941 F.3d 1351, 1360 (Fed. Cir. 2019).

[5] At a minimum, the facts of this case are distinguishable from *Boatmon*. In *Boatmon*, J.B. passed away the day after his vaccination, whereas R.V. passed away nine days after his vaccination. In *Boatmon*, the baby was placed on his back and the bedding was not disturbed in any way, whereas R.V. was placed on his stomach and a hand towel was found to have bunched up near his face. These factual differences underscore the point that one decision of a special master cannot, by itself, confer reasonable basis.

[6] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.

**IT IS SO ORDERED.**

**s/ Katherine E. Oler**
Katherine E. Oler
Special Master
